**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CONNIE GIBBONS,** | : | |
| | : | **Civil Action No. 1:03-CV-1554** |
| **Plaintiff** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **TECHNICAL SERVICES** | : | |
| **ASSOCIATES, INC.,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Plaintiff Connie Gibbons commenced this action against her former employer, Defendant

Technical Services Associates, Inc. ("TSA"), seeking to recover unpaid overtime she claims

Defendant failed to pay her in violation of certain provisions of the Fair Labor Standards Act, 29

U.S.C. §§ 201 et seq. ("Act" or "FLSA").  Defendant maintains that Plaintiff was exempt from

the overtime requirements mandated by the Act because she was a bona fide administrative,

executive, or professional employee.  The Court held a bench trial on August 29, 2005.  The

parties submitted post-trial briefs in October 2005.  The Court now makes the following findings

of fact and conclusions of law.

**I.      Findings of Fact**

1.       Defendant TSA is a Pennsylvania corporation that commenced operations in 1985

and is located in Mechanicsburg, Pennsylvania.  TSA is a software company that

specializes primarily in developing software for the management of purchasing or

procurement.  (N.T. 65, 66.)

2.       In October 1986, Plaintiff began working for Defendant as a secretary, and

performed such administrative duties as typing, answering telephones, preparing

invoices, and filing.  (N.T. 10, 11.)  Plaintiff started at a wage of approximately $6.00 per hour and worked as a secretary for one or two years.  (N.T. 14.)

3.      In 1987 or 1988, Plaintiff entered into a one-year training program to gain experience with Defendant's procurement software business.  (Id.)

4.      Following this training period, Plaintiff began working in a position offering support to Defendant's FAR-Master software business.  FAR-Master was software research engine Defendant developed that contained federal procurement regulations for most federal agencies.  (Id.)

5.      Plaintiff's duties with the FAR-Master program included providing support to customers, working with Defendant's programmers to resolve problems, developing and updating text associated with the software, assigning editing functions to subordinate employees, prioritizing subordinates' work, managing human resources needs of subordinate employees, and managing the shipping department.  (N.T. 14, 15, 67-69, 111, 113.)  Plaintiff was essentially in charge of managing the FAR-Master product for TSA.  (Id. 69.)

6.      Plaintiff's resume and business cards indicate that she became a "product manager" with TSA in the Customer-Off-The-Shelf ("COTS") business line, one of TSA's three business lines.  (N.T. 27, 32, 69.)  Plaintiff signed official business correspondence and forms as "product manager."  (Id. 46.)  Plaintiff's resume reflects that her responsibilities included management, supervision, customer service, and serving as a technical liaison to customers.  (N.T. 26, 27; Ex. D-1.)

7.      As a product manager, Plaintiff solely exercised certain supervisory duties over a

2

number of employees, including scheduling and conducting employee performance reviews, approving vacation and leave, assigning tasks, reviewing and approving time cards, developing employees' work schedules, and directing employees on a daily basis (N.T. 54, 55, 60, 72-74, 76.)  One former employee testified that she understood that Plaintiff was her supervisor.  (Id. 59.)

8.   In addition to the foregoing supervisory responsibilities, Plaintiff routinely conferred with TSA's two senior executives, Jesus Ramos and David Wilson, concerning hiring and terminating employees, and recommending compensation increases for employees in her department.  TSA senior management would either defer entirely to Plaintiff's recommendations in these matters, or would rely substantially upon Plaintiff's judgment and advice.  (N.T. 71-72, 74, 75, 88, 108-09.)  When an employee in her department was to be terminated, Plaintiff was responsible for notifying the employee.  (Id. 75.)

9.   Plaintiff was one of three TSA employees authorized to sign checks on behalf of the company, and Plaintiff was authorized to purchase any supplies she deemed necessary for her department.  (N.T. 76.)

10.  In the course of her day-to-day work, Plaintiff was subject to minimal supervision by Messrs. Ramos and Wilson, who had confidence in Plaintiff's intelligence and ability to manage the FAR-Master product.  (N.T. 77.)

11.  By January 2000, Plaintiff was earning $21.45 per hour.  (N.T. 15.)

12.  Eventually, the FAR-Master product began to lose money, primarily because the text that TSA was editing and including in the software became publicly available

free of charge over the internet.  (N.T. 75.)  Accordingly, in 2001, TSA made the decision to terminate the product line entirely and to terminate all employees working on FAR-Master with the exception of Plaintiff.  (Id.)  In August 2001, TSA executives advised Plaintiff that it was very likely that her position with the company would also be eliminated because the income associated with the products she managed was in such significant decline.  (Id.)

13.     Plaintiff's basic job responsibilities did not change significantly from the time she became product manager until the last day of her employment.  (N.T. 19, 69, 112.)

14.     Throughout her employment, Plaintiff understood that she was a salaried employee of TSA.  (N.T. 47-48.)

15.     Plaintiff understood that she was classified as an exempt employee.  (N.T. 37-38.)

16.     At no point during her employment did Plaintiff make a demand for overtime pay. (N.T. 22.)

17.     Eventually, Plaintiff's salary was decreased and by letter dated August 25, 2003, she formally resigned from her employment with TSA effective September 4, 2003.  (Ex. P-4.)

## II.     Conclusions of Law

1.      Plaintiff has brought this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., alleging that Defendant violated the Act by failing to pay her compensation at the rate of one and one-half time her regular hourly rate for hours worked in excess of 40 per week.

2.      Section 207(a) of the Act provides in relevant part that:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

3.      The Act provides a number of exceptions to the overtime requirement.  Relevant for purposes of this action, section 213 of the Act sets forth an exemption from the overtime requirement for any "employee employed in a bona fide executive, administrative, or professional capacity . . . ."  29 U.S.C. § 213(a)(1).

4.      Because the FLSA is a remedial statute, an employer bears the burden of proving that an exemption applies and the Act's exemptions are construed narrowly against the employer.  Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960); Reich v. Gateway Press, Inc., 13 F.3d 685, 694 (3d Cir. 1994).

5.      As set forth in the relevant implementing regulations, in order for an employee to be considered an exempt administrative employee, an employer must demonstrate that (1) it paid the employee at least $250 per week on a salaried basis; (2) Plaintiff's primary duties consisted of office or non-manual work directly related to the employer's management policies or general business operations; and (3) the employee's primary duties required her to exercise discretion and independent

judgment.  29 C.F.R. § 541.2.[1]

6.      There is no dispute between the parties that for all period relevant to this lawsuit, Plaintiff was paid more than $250 per week on a salaried basis.

7.      The Court finds that the testimony at trial establishes that Plaintiff's primary work responsibilities at TSA consisted of office work related to TSA's general business operations and management, specifically within the COTS business line.  The Court also finds that Plaintiff's role as a product manager required that she frequently exercise discretion and independent judgment in the supervision of subordinate employees, and in making key business decisions associated with the products for which she was responsible.  Therefore, the Court concludes that Plaintiff was employed by TSA in a managerial and administrative capacity.

8.      Accordingly, the Court finds that Plaintiff's primary administrative, executive, and professional work duties rendered her exempt from the FLSA's overtime requirements.  As a result, Plaintiff is not entitled to overtime pay under the FLSA, and judgment must be entered in favor of Defendant.

---

[1]      The Department of Labor revised the FLSA's implementing regulations governing certain exemptions, effective August 23, 2004.  See 29 C.F.R. § 541.  Plaintiff's employment with TSA ended in September 2003 and the Complaint was filed on September 5, 2003. Therefore, the Court applies the 2003 regulations and interpretations.  This approach is consistent with the approach taken by a number of other district courts addressing the issue of which regulations apply in light of the Department of Labor's new regulations.  See McDowell v. Cherry Hill Twp., 2005 U.S. Dist. LEXIS 29327 (D.N.J. 2005); Belt v. EmCare, Inc., 351 F. Supp. 2d 625 (E.D. Tex. 2005); Bagwell v. Florida Broadband, LLC, 385 F. Supp. 2d 1316 (S.D. Fla. 2005); Jackson v. McKesson Health Solutions, LLC, 2004 U.S. Dist. LEXIS 21997 (D. Mass. 2004).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CONNIE GIBBONS,** | : | |
| | : | **Civil Action No. 1:03-CV-1554** |
| **Plaintiff** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **TECHNICAL SERVICES** | : | |
| **ASSOCIATES, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

And now, this 22nd  day of February 2006, for the reasons set forth in the within

memorandum setting forth this Court's findings of fact and conclusions of law, **IT IS HEREBY**

**ORDERED THAT** the Clerk of Court is directed to enter Judgment in favor of Defendant on all

of Plaintiff's claims.  The Clerk of Court shall close the file.


      S/ Yvette Kane
Yvette Kane
United States District Judge